**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BROTHERHOOD OF LOCOMOTIVE | : | |
| ENGINEERS, THOMAS W. STEWART, | : | Civil Action No. 03-4627 |
| and TRACY ANN STEWART, | : | |
| | : | **OPINION** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| THE TOWN OF HAMMONTON, | : | |
| MARK FIORENTINO and | : | |
| BARRY WYTHE, | : | |
| | : | |
| Defendants. | : | |

**Appearances:**

Uwaila I. Esemuede, Esquire
Sumners George, P.C.
849 West State Street
Trenton, NJ 08618
       Attorney for Defendant Barry Wythe

**RODRIGUEZ, Senior District Judge:**

This matter comes before the Court on Defendant Barry Wythe's ("Wythe")

Motion for Summary Judgment [27] pursuant to Fed. R. Civ. P. 56.  Wythe seeks

judgment as to all Counts.  For the reasons stated below, the motion will be granted.

### BACKGROUND FACTS AND PROCEDURAL HISTORY

The facts will be taken as they appear from the face of the Second Amended

Complaint.  On August 17, 2002, Plaintiff Thomas W. Stewart ("Stewart") was the

engineer on a New Jersey Transit passenger train, proceeding west-bound through the

Town of Hammonton, New Jersey.  (Pl. Compl., ¶ 9.)  As the train approached the crossing at Fairview Avenue, a pedestrian jumped in front of the train.  (Pl. Compl. ¶ 9.)  Although Stewart sounded the horn and applied the emergency brakes, the pedestrian was struck and killed.  (Pl. Compl. ¶ 9.)

Stewart was approached by Defendant Mark Fiorentino ("Fiorentino") and another unnamed police officer, and instructed that he would be required to give a blood sample.  (Pl. Compl. ¶ 10.)  Stewart advised Fiorentino that federal law prohibited the test of a railroad employee's blood for alcohol and/or drug use absent probable cause.  (Pl. Compl. ¶ 11.)  Subsequently, Fiorentino contacted Wythe via telephone and was advised that the blood sample could be taken.  (Pl. Compl. ¶ 11.)  Thereafter, the blood sample was taken and returned a negative reading.  (Pl. Compl. ¶ 13.)

Stewart alleges that, as a result of the above, he has suffered severe emotional distress.  (Pl. Compl. ¶ 14.)  In addition, Stewart's wife, Tracy Ann Stewart, alleges that she has suffered loss of consortium damages.  (Pl. Compl. ¶ 18.)  The Plaintiffs filed a Complaint on August 22, 2004, alleging violations of the Fourth and Fourteenth Amendments and the Supremacy Clause of the United States Constitution.

Wythe moves for summary judgment as to all counts, arguing that he is entitled to qualified immunity and that his actions violated neither, the Fourth Amendment, the Due Process Clause of the Fourteenth Amendment nor the Supremacy Clause of the United

States Constitution.  Plaintiffs do not oppose the motion.[1]

## DISCUSSION

### A.  Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the Court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

---

[1]When a motion under Fed. R. Civ. P. 56 ("Rule 56") is unopposed, the rule provides that summary judgment shall be entered against the non-movant "if appropriate." See also Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even when a motion for summary judgment is unopposed the district court must determine whether the moving party is entitled to judgment as a matter of law).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the fact finder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

4

### B. Qualified Immunity

Wythe seeks summary judgment against Plaintiffs on the theory that he is entitled to qualified immunity.  Governmental officials are generally granted qualified immunity so that they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

When conducting a qualified immunity analysis, the Court must first consider whether "plaintiff's allegations, if true, establish a constitutional violation."  Hope v. Pelzer, 536 U.S. 730, 736 (2002).  If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If a constitutional right is found, the Court's next inquiry is to "determine whether that right was clearly established at the time of the alleged violation."  Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000) (citing Conn v. Gabbert, 526 U.S. 286, 290 (1999)).  That is, "would [it] be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 201-02 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)).  Summary judgment is appropriate if no reasonable juror could conclude that complainant's "clearly established rights were violated."  Wilson, 212 F.3d at 786 (citing Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995)).

In general, in order to satisfy the requirements of the Fourth Amendment, a blood test must be reasonable, which requires that the requesting officer have probable cause, and that it be completed in a reasonable manner.  Schmerber v. California, 384 U.S. 757, 768 (1966).  However, the Court has held that a train operator can be required to submit to a blood test even absent an individualized suspicion without violating the Fourth Amendment.  In Skinner v. Railway Labor Executives' Association, 489 U.S. 602, 606 (1989), a number of railroad employees challenged, on Fourth Amendment grounds, certain regulations promulgated by the Federal Railroad Administration that "mandate[d] blood and urine tests of employees who are involved in certain train accidents."[2]

The Court began the inquiry by finding that the taking of a blood sample implicates the Fourth Amendment.  Id. at 618.  The Court recognized that although the Fourth Amendment usually requires a warrant supported by probable cause, there is an exception "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement[s] impracticable."  Id. at 619 (quoting Griffin v. Wisconsin, 483 U.S. 868, 873 (1987).  To determine whether the special need vitiates the probable cause requirement, the Court "balance[s] the governmental and privacy interests to assess the practicability of the warrant and probable-cause requirements in the particular context."  Id.  The Court found that the privacy interests of railroad employees

---

[2]Certain accidents included "any train accident that involves . . . a fatality." Skinner, 489 U.S. at 609.

6

were outweighed by the governmental interest in maintaining the safety of the traveling public.  Id. at 621.

Finally, the Court held that the individualized suspicion requirement gives way to the important governmental interest because the privacy interests are minimal and the requirement would jeopardize the purpose of the search.  Id. at 624.  The Court reasoned that the intrusions on privacy under the regulation were minimal because (1) employees routinely consent to significant restrictions in their freedom of movement; (2) blood tests are not intrusive[3] as long as they are performed in a reasonable manner[4]; and (3) employees who participate in an industry that is regulated pervasively to ensure safety have diminished expectations of privacy.  Id. at 625, 627.  In contrast, the Court noted that the government's interest in testing without individualized suspicion is compelling because (1) employees subject to the regulations can cause great human loss before signs of impairment surface; and (2) blood tests assist the railroads in determining the causes of major accidents, including the elimination of drug impairment as a potential cause or contributing factor by way of negative test results.  Id. at 628-30.

In this case, the blood sample that Wythe communicated was necessary under the

---

[3]In Schmerber, the Court held that blood tests are not a significant intrusion because such "tests are commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain."  384 U.S. at 771.

[4]In Schmerber, the Court held that the blood test was conducted in a reasonable manner because "blood was taken by a physician in a hospital environment according to accepted medical practices."  384 U.S. at 771.

7

circumstances fits within the reasoning of <u>Skinner</u>.  Like the blood tests in <u>Skinner</u>, the blood test here followed a fatal accident.  (Pl. Compl., ¶ 9.)  In addition, the blood test was conducted at a medical facility by trained medical personnel.  (Pl. Compl., ¶ 13.)  Therefore, the Court finds that the blood test did not violate Stewart's Fourth and Fourteenth[5] Amendment Constitutional protections.  Accordingly, Wythe is entitled to qualified immunity.

### C.  Supremacy Clause Claim

Stewart argues that the Town of Hammonton Police Department ("Department") is preempted by the Federal Railroad Safety Act ("FRSA") from conducting alcohol and

---

[5]To the extent that Stewart argues his rights were violated because his freedom of movement was restricted as an independent Fourth Amendment seizure, the argument is without merit.  In <u>Skinner</u>, the Court held that "it suffices to note that any limitation on an employee's freedom of movement that is necessary to obtain the blood . . . contemplated by the regulations must be considered in assessing the intrusiveness of the searches effected by the Government's testing program."  489 U.S. 618.  Therefore, this argument is subsumed by the analysis relating to the taking of the blood sample.

To the extent that Stewart argues his rights were violated because his liberty was restricted under the Fourteenth Amendment, the argument is also rejected.  In <u>Breithaupt v. Abram</u>, the Supreme Court ruled that "there is nothing 'brutal' or 'offensive' in the taking of a sample of blood when done, as in this case, under the protective eye of a physician."  352 U.S. 434, 435 (1957).  The Court reasoned that "due process is not measured by the yardstick of personal reaction . . ., but by that whole community sense of 'decency and fairness' that has been woven by common experience into the fabric of acceptable conduct."  <u>Id.</u> at 436.  The Court noted that "blood test procedure[s] ha[ve] become routine in our everyday life.  It is a ritual for those going into the military service as well as those applying for marriage licenses. . . . We therefore conclude that a blood test taken by a skilled technician is not such 'conduct that shocks the conscience,' nor such a method of obtaining evidence that it offends a 'sense of justice.'" Id. at 436-37 (internal citations omitted).

8

drug testing of railroad workers, and that because the Department tested his blood, the Department violated the Supremacy Clause of the United States Constitution.  (Pl. Compl. ¶ 27.)  Although the regulations preempt "any State law, rule, regulation, order or standard covering the same subject matter, except a provision directed at a local hazard that is consistent with this part and that does not impose an undue burden on interstate commerce," the regulations also provide that "State criminal law that impose[s] sanctions for reckless conduct that leads to actual loss of life" is not preempted.  49 C.F.R. § 219.13 (2005).  On the face of the Complaint, and absent an opposition from Plaintiffs, there is no indication that the investigation by the Department, which was necessary to determine whether alcohol may have played a part in the cause of the accident, compromised the integrity of the FRSA.  Therefore, Plaintiffs' Supremacy Clause argument is without merit.

## CONCLUSION

Based on the foregoing, Defendant Wythe's Motion for Summary Judgment [27] as to all counts of the Complaint will be granted.

An appropriate Order will issue this date.

/S/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ, U.S.D.J.

Dated: January 3, 2006